UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

MARK A. DEGROOT
1332 Scheuring Road, Apt. 3
De Pere, WI 54115,

        Plaintiff,        Case No.

v.

AETNA LIFE INSURANCE COMPANY
151 Farmington Avenue
Hartford, CT 06156,

        Defendant,

R.R. DONNELLEY & SONS COMPANY BENEFIT PLAN
CT Corporation System
301 S. Bedford St., Ste. 1
Madison, WI 53703

## COMPLAINT

COMES NOW Plaintiff, Mark DeGroot, pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001. Et seq. ("ERISA"), and asserts his claim for accidental dismemberment benefits pursuant to the terms of a group accident policy issued by defendant and under 29 U.S.C. § 1132(a)(1)(B). In support of his claim, Plaintiff alleges and states as follows:

## THE PARTIES

1.      Plaintiff, Mark DeGroot ("Mr. DeGroot"), is an individual and citizen of the State of Wisconsin and a resident of Brown County, Wisconsin.

2.      Defendant, Aetna Life Insurance Company ("Aetna"), upon information and belief is a Connecticut corporation with its principal place of business in Hartford, Connecticut.

3.      The R.R. Donnelly & Sons Company Benefit Plan (the "Plan") upon information and belief, is an employee welfare benefit plan subject to the Employee Retirement Income Security Act of 1974 ("ERISA") as amended.

## JURISDICTION

4.      This Court has jurisdiction pursuant to ERISA, §502(a)(I)(B), 29 U.S.C. § 1132(a)(1)(B), which give the district court's jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee benefit plan.

5.      Venue is proper in this district pursuant to ERISA, §502(e)(2), 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(6).

## ALLEGATIONS

### *The Group Accident Policy*

6.      On or about September 5, 2012, Aetna issued a Basic Life, Supplemental Life, Dependent Supplemental Life, Supplemental Accidental Death and Personal Loss and Dependent Supplemental Accidental Death and Personal Loss Insurance Coverage. (No. GP-469657) to R.R. Donnelley & Sons Company (hereinafter the "Policy").

7.      A true and correct certified copy of the Policy and its endorsements is attached hereto as Exhibit No. 1.

8.      The Policy is an "employee welfare benefit plan," as defined in 29 U.S.C. § 1002(1), and specifically covered under ERISA.

### *Mr. DeGroot's Accident*

9.      At all relevant times, Mr. DeGroot, was and is a R.R. Donnelley & Sons Company employee and was a beneficiary under the Policy.

10.      On December 2, 2015, Mr. DeGroot suffered a severe traumatic injury to his left hand when the black powder rifle he was using to hunt deer exploded in his hands.

11.      The attached photos show the force of the explosion. The blast was sufficient to blow the windows out of his truck, destroy the rifle receiver, and split the rifle into pieces. (See Exhibit No. 2)

12.      The injuries to Mr. DeGroot's left hand were catastrophic. (See Exhibit No. 3)

13.     As a direct and proximate result of the firearm malfunction, Mr. DeGroot was forced to undergo numerous painful surgeries and medical procedures which resulted in the removal of both his left index finger and left thumb. (See Dr. Van Zeeland's summation Exhibit 4)

14.     Mark sustained an extremely complex and devastating left hand injury where his native left thumb was completely amputated at the wrist joint/carpometa carpal joint. His entire native left thumb is absent. (See *Id.*)

15.     The index finger of Mr. DeGroot's left hand was also severely damaged. The injury required immediate partial amputation of the index finger at the level of the "middle phalanx." (The middle phalanx is the bone between the second and third knuckle)  (See *Id.*)

16.     The middle, ring and pinky fingers of Mr. DeGroot's left hand were damaged severely, but not amputated.  (See *Id.*)

17.     The residual, partially amputated index finger of Mr. DeGroot's left hand was then *surgically removed* and reattached to the position where the thumb *used to be* attached in a procedure called a "Pollicization".  (See *Id.*)

18.     A "Pollicization" is a hand surgery in which a finger (or in this case a residual partially amputated finger) is surgically migrated to the former position of the amputated thumb.

19.     In this case the former residual left index finger was migrated and reattached but is fused and retained 0% flexion or articulation.  (See photos attached as Exhibit No. 4)

20.     The "Pollicization" serves aesthetic purposes insofar as it *appears* Mr. DeGroot has a complete hand.

21.     The "Pollicization" was constructed through the use of numerous pieces of medical hardware.  (See x-ray attached as Exhibit No. 5)

22.     The "Pollicization" cannot bend or flex in any way, the "Pollicization" cannot move in opposition or apposition as a thumb can.

23.     The "Pollicization" only resembles a human thumb, but only so far as it is approximately the same size as a thumb, it retains no functioning use as a thumb, does not have functional joints or a thumb nail.  (See photos attached as Exhibit No. 6, see also Exhibit No. 4)

24.     Mr. DeGroot refers to the "Pollicization" as "my spike" because of its fixed, immobile position and because it does not articulate or flex in any way.

25.     The "Pollicization" cannot be used to manipulate objects or otherwise function in any way as a thumb.

26.     As of the completion of his medical procedures, Mr. DeGroot has one completely missing amputated index finger and a "Pollicization" on his left hand in the former position of the thumb.

27.     Mr. DeGroot has no index finger on his left hand.

28.     Mr. DeGroot has no thumb on his left hand.

29.     Photographs that accurately show the condition of Mr. DeGroot's hand during and following medical procedures and reconstruction are attached hereto as Exhibit No. 7.

*Policy Provisions Related to Mr. DeGroot's Post-Accident Condition*

30.     The Policy includes a benefit equal to "25% of Principal Sum" for Accidental Death and Personal Loss for the:

> **"Thumb and Index Finger of the same hand by actual and permanent severance at or above the permanent severance at or below the metacarpophalangeal joint of both fingers."**

31.     The "Principal Sum" of the Policy as it applies to Mr. DeGroot is $39,000.00. (25% of $156,000.00)

*Mr. DeGroot's Claim*

32.     Mr. DeGroot submitted to Aetna a timely claim for accidental dismemberment benefits under the Policy ("Claim form". (See Exhibit No. 7)

33.     Mr. DeGroot's claim included a completed Physicians statement which provides that the thumb was amputated at the wrist. Exhibit No. 8.

34.     Mr. DeGroot also submitted with his Claim Form, a summation of his surgeries from

his surgeon, Dr. Nathan Van Zeeland, describing the injuries. (See Exhibit No. 4)

35. Dr. Van Zeeland stated that the cause of the amputations was the devastating injury and also identified the exact points at which the amputations on each finger were performed and subsequent migration and "Pollicization" of the index finger.

36. In addition to the Claim Form and summation of the procedure by Dr. Van Zeeland, Aetna obtained or was provided with photographs of Mr. DeGroot's hands following his medical treatment and other medical records from the treating physicians.

### *Aetna's Decision to Deny Benefits to Mr. DeGroot*

37. In a letter dated August 25, 2016, Aetna informed Mr. DeGroot of its decision to deny accidental dismemberment benefits under the Policy. (See Exhibit No. 9)

38. Aetna denied benefits to Mr. DeGroot because there was ". . . no documentation in the file that you [Mr. DeGroot] suffered the loss of the thumb and index finger of the left hand by actual and permanent severance at or above the metacarpophalangeal joint of both fingers."

### *Aetna's Errors Regarding the Location of the Severance*

39. The Claim Form, the Physician Statement, the summation from Dr. Van Zeeland and other medical records provided totally contradicts Aetna's conclusion regarding the location of the severance. Dr. Van Zeeland describes the exact points at which the amputations and finger migration were performed.

40. The photographs of Mr. DeGroot's hands also plainly and obviously contradict Aetna's conclusion as to the location of the severance.

41. Mr. DeGroot submitted a timely appeal. (See Exhibit No. 10)

42. On or around May 2, 2017, Mr. DeGroot formally requested of Aetna that he be allowed to submit a second level appeal principally to fully populate his file with plenary medical records as there was virtually nothing contained in the administrative record at the time of the denial. (See Exhibit No. 12)

43. In a letter dated June 16, 2017 Aetna indicated it would allow Mr. DeGroot to supplement the administrative record with complete medical records. (See Exhibit No. 11) Mr.

DeGroot did so.  (See Exhibit No. 12)

***Aetna's Errors Regarding the Location of the Severance***

44.     In a letter dated July 27, 2017 (Ex. 13) Aetna continued to deny the claim maintaining:

> "We understand that Mr. DeGroot lost his entire native thumb at the CMC joint as a result of the accident."

> It is therefore not in dispute that Mr. DeGroot completely lost his thumb.

45.     In the July 27, 2017 (Ex. 13) letter Aetna goes on to state:

> "As Dr. Zeeland states, the index finger was amputated at the middle phalanx from the injury."

> Referring to the *initial* traumatic accident where only part of the index finger was amputated.

46.     Aetna here ignores that shortly after the initial trauma and as a part of the reconstructive surgery the entire index finger was completely amputated at the metacarpophalangeal joint.

47.     Aetna's conclusion that Mr. DeGroot's fingers were not amputated through or above the metacarpophalangeal joint is erroneous.  The thumb was *totally amputated*, the index finger was *totally amputated* and migrated to form the "Pollicization" in the former position of the thumb.

48.     A "Pollicization" is not a thumb.

49.     Aetna's conclusion is not supported by the medical records.

## MR.  DEGROOT'S CLAIM FOR RELIEF

## DENIAL OF BENEFITS IN VIOLATION OF SECTION 502(A)(1)(B) OF ERISA

50.     Aetna's original denial of Mr. DeGroot's claim was arbitrary, capricious, and incorrect.

51.     The proper standard of review is DeNovo.

52.     The review purportedly conducted by Aetna was the arbitrary, capricious and an

erroneous denial of Mr. DeGroot's claim. Such a review clearly fails to satisfy the full and fair review standard required.

53.     Mr. DeGroot has completed all steps required prior to the filing of this complaint under the Policy and ERISA, and has exhausted all administrative remedies.

54.     By denying Mr. DeGroot payment of the accidental dismemberment benefits, Aetna has violated, and continues to violate ERISA, § 502(a)(1)(B).

55.     The covered loss sustained by Mr. DeGroot entitles him to a benefit of 25% of Principal Sum" under the Policy (i.e., $39,000.00).

56.     As a result of Aetna's denial of accidental dismemberment benefits, Mr. DeGroot has incurred, and will continue to incur, attorney fees and costs and is entitled to recover these fees and costs under 29 U.S.C. § 1132(g)(1) in an amount to be determined by the court.

WHEREFORE, Plaintiff Mark DeGroot respectfully prays that for judgment in his favor against the defendant as follows:

A.     Accidental dismemberment benefits;

B.     Prejudgment and postjudgment interest and costs;

C.     An award of attorney fees and costs under 29 U.S.C. § 1132(g)(1); and

D.     For such other relief as justice may require.

Dated this 3rd day of August, 2017.

WANEZEK, JAEKELS, DAUL & BABCOCK, S.C.
Attorneys for Plaintiff, Mark A. DeGroot


By:  /s/  David D.  Daul
       David D.  Daul, State Bar No. 1047368
       Email:  david@lawyersgreenbay.com
       417 S.  Adams Street
       Green Bay, WI  54301
       Telephone: 920-437-8191
       Facsimile: 920-437-8101
